**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT KNOXVILLE**

| | | |
|---|---|---|
| JANE DOE,<br><br>*Plaintiff*,<br><br>v.<br><br>TODD BLANCHE, in his official capacity as Attorney General of the United States, *et al.*,<br><br>*Defendants*. | ) | Case No. 3:26-cv-488<br><br>Judge Atchley<br><br>Magistrate Judge Poplin |

**MEMORANDUM & ORDER**

Before the Court is Plaintiff Jane Doe's motion for a temporary restraining order [Doc. 4]. In a previous order, [Doc. 13], the Court instructed Todd Blanche, Joseph B. Edlow, Markwayne Mullin, and David J. Venturella (collectively, "Defendants") to respond to this motion. Defendants have done so. [Doc. 19]. Considering these developments and for the reasons explained below, the Court now construes Plaintiff's motion [Doc. 4] as a motion for a preliminary injunction and orders more thorough briefing on all matters related to the issuance of an injunction.

## I. BACKGROUND

As the Court explained previously, Plaintiff claims the United States initially designated Ukraine for Temporary Protected Status ("TPS") on April 19, 2022. [Doc. 13, at 1]. DHS's subsequent reviews of Ukraine's TPS resulted in several extensions. [*Id.*]. But those extensions are, according to Plaintiff, soon expiring. [*Id.*]. Plaintiff claims that the website of United States Citizenship and Immigration Services and the Federal Register list Ukraine's TPS as being valid only until October 19, 2026. [*Id.* at ¶ 14]. Plaintiff shows she is a Ukrainian citizen with TPS who

currently resides in northeast Tennessee. [Doc. 1, at ¶ 2]. According to Plaintiff, when the TPS ends after October 19, Plaintiff will be unable to legally work, drive, or send her children to school, forcing Plaintiff to choose between remaining in the United States with no livelihood and returning to Ukraine. [*Id.* at ¶ 15].

To avoid this choice, Plaintiff asks this Court to declare that the Ukraine's TPS automatically extended by statute until April 19, 2027, and issue an injunction compelling the government to update their systems to reflect this extension. [*Id.* at 5]. In support of this request, Plaintiff argues that, under 8 U.S.C. § 1254a(b)(3)(A), the Defendants were required to either redesignate or terminate Ukraine's TPS by August 20, 2026. [Doc. 1, at 3–4]; *see* 8 U.S.C. § 1254a(b)(3)(A) ("At least 60 days before the end of the initial period of designation, and any extended period of designation, . . . the Attorney General . . . shall review the conditions in the foreign state . . . and shall determine whether the conditions for such designation under this subsection continue to be met.").[1] Plaintiff claims that the Defendants did not "determine" that Ukraine "no longer meets the conditions for designation" by August 20, meaning that Ukraine's TPS "extended for an additional period of 6 months." 8 U.S.C. § 1254a(b)(3)(C); [*see* Doc. 5, at 2].

The Court ordered the Defendants to respond to Plaintiff's motion by October 13, 2026. [Doc. 13, at 5]. In their response, the Defendants argue that Plaintiff's argument is speculative because it assumes that Defendants have not made a determination about Ukraine's TPS. [Doc. 19, at 4]. Defendants concede that "the statute requires the Secretary [of Homeland Security] to

---

[1] Although Congress initially delegated the task of designating countries for TPS to the Attorney General, this responsibility now belongs to the Secretary of Homeland Security. *See Mullin v. Doe*, 609 U.S. 324, 331 (2026) (citing 6 U.S.C. §§ 552(d), 557). Therefore, the Court will interpret all references to the Attorney General in 8 U.S.C. § 1254a as references to the Secretary of Homeland Security.

make his determination at least sixty days prior to the TPS end date." [*Id.*]. But they argue that the statute does not require notice of the determination to "be published within the same time frame" because the statute treats the determination and the notice as separate events by requiring the notice to occur at some point *after* the determination. [*Id.*].

To support this claim, Defendants point to several previous notices in the Federal Register by the Department of Homeland Security. [*Id.*]. These notices, each published *after* the Secretary's 60-day deadline had elapsed, provided that a country's TPS had automatically extended for six months under § 1254a(b)(3)(C) because the Secretary of Homeland Security had not made a determination about the conditions in the country. [*Id.* (citing *Extension of South Sudan Designation for Temporary Protected Status*, 90 Fed. Reg. 19217 (May 6, 2025); *Extension of Lebanon Designation for Temporary Protected Status*, 91 Fed. Reg. 32069 (May 29, 2026)).

Defendants also argue that Plaintiff's claims are barred by 8 U.S.C. § 1254a(b)(5)(A). [*Id.* at 3]. This provision bars "judicial review of any determination . . . with respect to the designation, or termination or extension of a designation, of a foreign state." § 1254a(b)(5)(A). Defendants rely on the Supreme Court's recent decision in *Mullin v. Doe*, 609 U.S. 324 (2026), which interpreted this provision, to argue that Plaintiff seeks non-constitutional review of a TPS determination. [Doc. 19, at 3–4]. Such review, Defendants maintain, is barred by § 1254a(b)(5)(A). [*Id.*]. Defendants lastly contend that Plaintiff, at least for the purposes of a temporary restraining order, has not shown that she will suffer irreparable harm by the stated TPS expiration date of October 19, 2026, because "Plaintiff would not lose her associated benefits for at least sixty days after publication of" any decision to terminate Ukraine's TPS. [Doc. 19, at 6]. With the benefit of briefing from both Plaintiff and Defendants, the Court now determines whether Plaintiff's motion [Doc. 4] should be construed as a motion for a preliminary injunction.

## II. FORM OF INJUNCTIVE RELIEF SOUGHT BY PLAINTIFF

On October 7, 2026, Plaintiff moved for a temporary restraining order ("TRO"). [Doc. 4]. Specifically, Plaintiff sought "temporary relief ruling that the TPS system for Ukrainians was automatically extended until to April 19, 2027[,] *or a final disposition of this case*, whichever occurs first." [*Id.* at 2 (emphasis added)]. In support of the motion, Plaintiff contends that permitting "this case to play out through the normal lengthy timing of a Federal Court Lawsuit would result in irreparable harm because Plaintiff would lose his/her driver's license and authorization to work on October 19, 2026." [*Id.*].

The Court notes that Federal Rule of Civil Procedure 65 contemplates two different forms of temporary injunctive relief: TROs and preliminary injunctions. The factors to be considered in determining whether a TRO or preliminary injunction should issue, however, are the same. *See, e.g., Workman v. Bredesen*, 486 F.3d 896, 904–05 (6th Cir. 2007). In determining whether to grant a request for preliminary relief, courts balance the following factors: (1) whether plaintiff "has shown a strong likelihood of success on the merits"; (2) whether plaintiff will suffer irreparable injury in the absence of an injunction; (3) whether the injunction will cause substantial harm to others; and (4) whether the injunction would serve the public interest. *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) (citations omitted).

Where these two forms of injunctive relief differ, however, is in the temporal scope of their purposes. A preliminary injunction is intended to "preserve the relative position of the parties until a trial on the merits can be held." *Lackey v. Stinnie*, 604 U.S. 192, 200 (2025) (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)). The purpose of the TRO, on the other hand, is to "preserv[e] the status quo and prevent[] irreparable harm just so long as is necessary to hold a hearing" for a preliminary injunction, "and no longer." *Granny Goose Foods, Inc. v. Bhd. of*

*Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cnty.*, 415 U.S. 423, 439 (1974). Consequently, a TRO can be issued ex parte without a hearing, whereas a preliminary injunction may only be granted upon notice and a hearing. *See* Fed. R. Civ. P. 65(a)–(b). Thus, when a non-movant is given notice of a motion for injunctive relief and an opportunity to be heard, a court may treat that motion as a motion for a preliminary injunction. *See Malam v. Adducci*, 459 F. Supp. 3d 867, 874 (E.D. Mich. 2020); *Moncier v. Jones*, 803 F. Supp. 2d 815, 826 (E.D. Tenn. 2011).

In this case, Defendants have responded [Doc. 19] to Plaintiff's motion for temporary injunctive relief [Doc. 4], which means that Defendants have notice about this motion. Moreover, the Court has not granted Plaintiff's motion without setting it for hearing, which gives Defendants an opportunity to be heard. Therefore, this Court will treat Plaintiff's motion [Doc. 4] as a motion for a preliminary injunction. *See Malam*, 459 F. Supp. 3d at 864; *Moncier*, 803 F. Supp. 2d at 826.

There is an additional reason for the Court to arrive at this conclusion. Defendants explain that "Plaintiff merely awaits publication of the Secretary's determination" in the Federal Register, [Doc. 19, at 6], a publication Defendants acknowledge they are legally obligated to make. [*Id.* at 4]. The publication of this determination could arise in one of three ways. First, the Defendants could redesignate Ukraine's TPS, which would moot this case. *See Ohio v. EPA*, 969 F.3d 306, 308–09 (6th Cir. 2020) (holding that the plaintiffs' request for preliminary injunctive was moot because "as a practical matter" the defendants had already provided the requested relief through a new regulation). Second, the Defendants could declare that they have made no determination, extending Ukraine's TPS by six months. [*See* Doc. 19, at 3 (acknowledging that "[i]n the absence of a determination, 8 U.S.C. § 1254a(b)(3)(C) operates automatically to extend the TPS status by six months")]. This too would moot the case since it would give Plaintiff exactly what she seeks. *See Ohio*, F.3d at 308–09; [Doc. 4, at 2]. Or the Defendants could announce the termination of

Ukraine's TPS, in which case Plaintiff "would not lose her associated benefits for at least sixty days after publication of the decision." [Doc. 19, at 5]; *see* 8 U.S.C. § 1254a(b)(3)(B) (explaining that the termination of TPS "shall not be effective earlier than 60 days after the date the notice is published").

So, at a minimum, Plaintiff would have sixty days from the publication of Defendants' determination before she could potentially sustain irreparable injury. Again, the point of a TRO is to "prevent[] irreparable harm just so long as is necessary to hold a hearing" for a preliminary injunction, "and no longer." *Granny Goose Foods, Inc.*, 415 U.S. at 439. The rules of civil procedure envision a hearing being held within fourteen days, as that is the limit they place on the duration of a TRO. Fed. R. Civ. P. 65(b)(2). If Defendants were to announce the termination of Ukraine's TPS today, Plaintiff would have forty-six more days than the maximum length of a TRO before she could sustain irreparable harm. That gives the Parties ample time to brief the Court more thoroughly and develop the factual record more solidly than a TRO timetable would allow. This cements the Court's conclusion that it should construe Plaintiff's motion [Doc. 4] as one for a preliminary injunction.

## III. CONCLUSION

For the foregoing reasons, the Court **CONSTRUES** Plaintiff's motion for injunctive relief [Doc. 4] as a motion for a preliminary injunction. The Court therefore **ORDERS** all parties to fully brief the Court on <u>all issues</u> related to the issuance of a preliminary injunction. Plaintiff's briefing is due **on or before October 21, 2026.** Defendants' briefing is due **on or before October 27, 2026.** All Parties are **FURTHER ORDERED** to brief the Court on the following specific issues:

- Whether 8 U.S.C. § 1254a(b)(3)(A) requires the Secretary of Homeland Security to publish notice of periodic TPS determinations by a specific date;
- Whether 8 U.S.C. § 1254a(b)(5)(A) bars judicial review of the Defendants' actions in this case; and

- If injunctive relief is appropriate, how the Court should tailor its preliminary injunction so that it orders only what is necessary to provide complete relief to Plaintiff. *See Trump v. CASA, Inc.*, 606 U.S. 831, 852 (2025).

If necessary, the Court will schedule a hearing for Plaintiff's motion [Doc. 4] in Knoxville, Tennessee at a later date.

**SO ORDERED.**

*/s/ Charles E. Atchley, Jr.*
**CHARLES E. ATCHLEY, JR.**
**UNITED STATES DISTRICT JUDGE**